UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BORIS SHIRMAN,

                Plaintiff,

    vs.

WHEC-TV, LLC

                Defendant.

Case No. 6:18-cv-6508

# **DEFENDANT WHEC-TV, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

**WARD GREENBERG HELLER & REIDY LLP**
1800 Bausch & Lomb Place
Rochester, New York 14604
Telephone:  (585) 454-0700

*Attorneys for Defendant WHEC-TV, LLC*

### TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 6

    I.    Plaintiff's First Claim Must be Dismissed Because WHEC's News
        Reporting of the Video Constituted Fair Use ........................................................ 6

        A.    The Purpose and Character of WHEC's Broadcast of the Video Favors
               Fair Use ...................................................................................................... 7

             1.    The WHEC Broadcast Was News Reporting ...................................... 8
             2.    WHEC's Use of the Video was Transformative in Nature ............... 10
             3.    The Commercialism Factor Favors Fair Use ................................... 12

        B.    The Factual Nature of the Video Favors Fair Use ................................... 13

        C.    WHEC Used a Small Amount of the Video in its Broadcast ................... 14

        D.    The Lack of Market Effect Factor Favors WHEC .................................... 15

    II.    Plaintiff's Second Claim Must be Dismissed Because Plaintiff Fails to
        Plead the Essential Elements of a DMCA Violation ............................................ 16

        A.    WHEC's Fair Use of the Video Forecloses a DMCA Claim.................... 18

        B.    WHEC Did Not Remove CMI ................................................................. 19

        C.    Plaintiff's Conclusory Allegation of Intent Are Insufficient to Sustain a
               DMCA Claim .......................................................................................... 21

    III.    The Deficiencies of the Complaint Cannot be Overcome by Repleading ........... 23

Conclusion ........................................................................................................................ 24

<u>**T**ABLE OF **A**UTHORITIES</u>

**<u>Cases</u>**

*Aaberg v. Francesca's Collections, Inc.*, 2018 U.S. Dist. LEXIS 50778 (S.D.N.Y. Mar. 27, 2018) .................................................................................................................. 18

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.2d 500 (S.D.N.Y. 2009).................... 20

*Arrow Prods., LTD. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359 (S.D.N.Y. 2014) ...................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 18, 21

*Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690 (S.D.N.Y. 2009) ................ 19

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ................................................ 12, 14

*Authors Guild, Inc. v. HathiTrust,* 755 F.3d 87 (2d Cir. 2014) ................................................... 15

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) ................................................................. 7, 13, 14

*Campbell* v. *Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994)........................................ 7, 8, 10, 12, 14

*Cariou v. Prince,* 714 F.3d 694 (2d Cir. 2013)............................................................... 6, 7, 13, 15

*Castle Rock Entm't Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132 (2d Cir. 1998) ................ 10, 15

*Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629 (S.D.N.Y. 2016)..................................... 22, 23

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ..................................................... 4

*Colliton v. Cravath, Swaine & Moore LLP*, 2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 24, 2008) .................................................................................................................. 23

*DISH Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452 (E.D.N.Y. 2012) ..................... 18

*Economic Opportunity Commission v. County of Nassau*, 47 F. Supp. 2d 353 (E.D.N.Y. 1999) ...................................................................................................................... 24

*Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177 (D. Mass. 2007) ........................................ 15

*Gersbacher v. City of New York*, 134 F. Supp. 3d 711 (S.D.N.Y. 2015) ..................................... 20

*Gordon v. Nextel Commc'ns*, 345 F.3d 922 (6th Cir. 2003)......................................................... 21

*Harper & Row Publrs. v. Nation Enters.*, 471 U.S. 539 (1985)......................................... 7, 13, 15

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009).................................................................................. 18

*Hershey v. Goldstein*, 938 F. Supp. 2d 491 (S.D.N.Y. 2013) ...................................................... 11

*Hofheinz v. A&E TV Networks*, 146 F. Supp.2d 442 (S.D.N.Y. 2001) ........................................ 15

*Kasparov v. Ambit Tex., LLC*, 2016 U.S. Dist. LEXIS 31637 (E.D.N.Y. Mar. 10, 2016) ........... 23

*Keeling v. Hars*, 809 F.3d 43 (2d Cir. 2015) ................................................................................. 7

*Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898 (E.D. Mo. 2015) .................... 19

*Konangataa v. ABC*, 2017 U.S. Dist. LEXIS 95812 (S.D.N.Y. Jun. 21, 2017) ............................ 9

*L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*, 2017 U.S. Dist. LEXIS
    171708 (W.D.N.Y. Oct. 17, 2017) ........................................................................................... 21

*L-7 Designs, Inc. v. Old Navy*, 647 F.3d 419 (2d Cir. 2011) ....................................................... 20

*Mathieson v. Associated Press*, 1992 U.S. Dist. LEXIS 9269 (S.D.N.Y. June 24, 1992) ........ 9, 13

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) .......................................... 20

*Maxtone-Graham v. Burtchaell*, 631 F. Supp. 1432 (S.D.N.Y. 1986) .......................................... 8

*Mills v. State of Ala.*, 384 U.S. 214 (1966) ................................................................................... 4

*Monster Communs., Inc. v. Turner Broad. Sys.*, 935 F. Supp. 490 (S.D.N.Y. 1996) ............. 13, 14

*Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295 (3d Cir. 2011) ........................................ 19

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................................................... 4

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004) .............................................................. 8

*Oyewole v. Ora*, 291 F. Supp. 3d 422 (S.D.N.Y. 2018) ................................................................ 6

*Pers. Keepsakes, Inc. v. PersonalizationMall.Com, Inc.*, 2012 U.S. Dist. LEXIS 15280
    (N.D. Ill. Feb. 8, 2012) ........................................................................................................... 17

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ........................................................................... 19

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014) .............. 10, 12, 13

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 861 F. Supp. 2d 336 (S.D.N.Y. 2012) ......... 10

*TCA Television Corp. v. McCollum*, 151 F. Supp. 3d 419 (S.D.N.Y. 2015) ................................. 6

*TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016) ............................................ 6, 8

*Uddoh v. United Healthcare*, 254 F. Supp. 3d 424 (E.D.N.Y. 2017) .......................................... 24

iii

*Video-Cinema Films, Inc. v. CNN, Inc.*, 2001 U.S. Dist. LEXIS 25687 (S.D.N.Y. Oct. 1, 2001) ........................................................................................................................ 8

*Virdis Dev. Corp. v. Bd. of Supervisors*, 92 F. Supp. 3d 418 (E.D. Va. 2015) ............................ 11

*Virginia v. Hicks*, 539 U.S. 113 (2003) ...................................................................................... 25

*Wallace v. N.Y.C. Dep't of Corr.*, 1996 U.S. Dist. LEXIS 22368 (E.D.N.Y. Oct. 9, 1996) ........ 23

*William Wade Waller Co. v. Nexstar Broad., Inc.*, 2011 U.S. Dist. LEXIS 72803 (E.D. Ark. July 6, 2011) ...................................................................................................................... 21

*Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991) ............................................... 8, 14, 15

## Statutes

17 U.S.C. § 107 ................................................................................................................... passim

17 U.S.C. § 1201 ...................................................................................................................... 19

17 U.S.C. § 1202 ................................................................................................................. 17, 21

## Other Authorities

Merriam Webster's Collegiate Dictionary, 10th ed. ...................................................................... 20

Report of the United States House of Representatives, No. 105-551 (1998) ............................... 17

## Treatises

Alan E. Garfield, *The Case for First Amendment Limits on Copyright Law*, 35 Hofstra L. Rev. 1169 (2007) ...................................................................................................................... 25

William McGeveran, *Rethinking Trademark Fair Use*, 94 Iowa L. Rev. 49 (2008) .................... 25

## INTRODUCTION

In this action, the Plaintiff alleges that WHEC-TV, LLC infringed an unregistered copyright held over a video he created (and which was posted on YouTube) by airing small portions of that video during WHEC's November 7, 2016 evening news broadcast. He further alleges that WHEC removed copyright management information from the video before using it. As part of his Complaint, the Plaintiff has provided copies of both his video, and the WHEC broadcast, which demonstrate conclusively that neither assertion is correct as a matter of law. As such, the Complaint fails to state a claim, and no measure of repleading can cure the terminal deficiencies of Plaintiff's action.

Plaintiff describes himself to the Court as a "professional photographer in the business of licensing his photographs and videos to online and print media for a fee[,] having a usual place of business at 30 Wharton Court, Irvine California." (Dkt. #1, ¶ 5.) According to his publicly available website, he is actually a photojournalism student at Rochester Institute of Technology, who proudly advertises that his work has been published by "WXXI Rochester Public Radio," "WHEC: Rochester [on air]," and "WKU Mountain Workshops."[1]

Sometime prior to the 2016 presidential election, Plaintiff created a video of interviews of students at the Integrated Arts and Technology High School preparing to vote for the first time ("Video"). (Dkt. #1, ¶ 7.) The Video was uploaded by local PBS station WXXI to its YouTube channel. As part of that process, WXXI included a basic description of the Video:

---

[1] *See* https://borisshirman.com/about-contact  (last accessed August 6, 2018).



(Dkt. #1, ¶ 8; *see* https://www.youtube.com/watch?v=cHgzw1vM7Q8 [last accessed August 6, 2018].) According to the description, the Video was uploaded to YouTube by WXXI on October 27, 2016, and contains "photographs and interviews" by "Rochester Institute of Technology student Boris Shirman." The Complaint does not allege that Plaintiff himself uploaded the Video to YouTube, nor does it allege that Plaintiff attached any copyright management information to the Video.

The Plaintiff's pride in his work having been published by Defendant, WHEC-TV, LLC ("WHEC") appears to have been fleeting (although he continues to promote this fact on his website). According to a query result from the United States Copyright Office, Plaintiff waited until March 14, 2018 to register the Video (i.e. 16 months after its creation):



*(Available at* https://cocatalog.loc.gov [last accessed August 6, 2018]; *see also* Dkt. #1, ¶ 9.) He then commenced this action on July 11, 2018.

Plaintiff's first claim is a traditional copyright infringement allegation related to WHEC's broadcast of an excerpt from the Video during its newscast on the eve of the 2016 presidential election. However, a simple comparison of the Video with WHEC's broadcast demonstrates that WHEC's use of excerpts from the Video is the exact type of First Amendment fair use that Congress sought to protect by including § 107 in the Copyright Act. Whereas the Video focuses on a myriad of feelings experienced by the subject students, WHEC transformed several short visual excerpts and one audio excerpt of the Video into political news coverage concerning the 2016 presidential election. (*See* Declaration of Casey Clark, executed on August 7, 2018 ["Clark Decl."], **Exhibit 1**.) Indeed, each factor set forth in § 107 favors WHEC's fair use of the Video.

Moreover, WHEC's transformative use is consistent with § 107's fair use protection specifically provided to news reporting;  the foundational purpose of the First Amendment – protecting freedom of speech, particularly when it pertains to political matters – highlights the importance of dismissing claims of this nature at the earliest stage possible in order to minimize the potential for chilling such speech. *See Mills v. State of Ala.*, 384 U.S. 214, 218-19 (1966)

(Black, J.) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes. The Constitution specifically selected the press…."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 329 (2010) ("'First Amendment freedoms need breathing space to survive.' . . . the Court cannot resolve this case on a narrower ground without chilling *political speech*, speech that *is central to the meaning and purpose of the First Amendment*." (emphases added) (quoting *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 468–69 (2007)).[2] A fair use analysis, properly guided by First Amendment principles, therefore commands dismissal of Plaintiff's first claim.

As to his second claim, the Plaintiff alleges that WHEC "removed copyright management information identifying Plaintiff as the author of the Video," (Dkt. #1, ¶ 18) and then broadcasted

---

[2] There is ample United States Supreme Court jurisprudence on the prioritization of First Amendment principles. *See e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 269, 84 S. Ct. 710, 720, 11 L. Ed. 2d 686 (1964), in which the Court explained:

> The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." . . . "The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system."

(citing *Roth v. United States*, 354 U.S. 476, 484 (1957), *and Stromberg v. California*, 283 U.S. 359, 369 (1931))).

that work with the copyright information missing.[3] The Plaintiff contends this is a violation of the Digital Millennium Copyright Act. However, the exhibits and websites that are referenced in the Complaint paint a markedly different picture that demonstrates that the second claim is unviable.

First, even if the Court were to assume that WXXI's YouTube description constitutes an attribution of authorship, and thus "copyright management information" worthy of protection, the plain fact is that WHEC did not remove that attribution from the Plaintiff's work; indeed, it repeated it. Following WHEC's broadcast, no viewer would have had any question as to who created the Video; in fact, WHEC's broadcast provided greater clarity of authorship than the WXXI YouTube description. Hence, any authorial attribution was not "removed" as the Plaintiff claims.

Second, Plaintiff has given the Court no basis to infer that WHEC had the requisite intent to sustain the second claim. To be actionable, a party accused of removing copyright management information must have done so "knowing[ly], or … having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." Because it cannot be disputed that WHEC purposely attributed the Video to the Plaintiff, it is implausible to assert that WHEC acted with the necessary mental state to "induce, enable, facilitate, or conceal an infringement."

Given that the Plaintiff's material factual allegations are demonstrably incorrect, it is highly doubtful that amendment of the Complaint can cure the dispositive shortcomings in the second claim. That claim, like the first, should therefore be dismissed.

---

[3] As noted in Point II(A), *infra*. because WHEC's use of the Video was a fair use, the Court need not address the merits of Plaintiff's second claim in order to dismiss it.

<u>**ARGUMENT**</u>

I.   **PLAINTIFF'S FIRST CLAIM MUST BE DISMISSED BECAUSE WHEC'S NEWS REPORTING OF THE VIDEO CONSTITUTED FAIR USE**

Plaintiff's first claim alleges that WHEC infringed his copyright in violation of 17 U.S.C. §§ 106, 501, by the unauthorized reproduction and public display of some selected excerpts from his copyrighted Video during the course of a newscast. (Dkt. #1, ¶ 1, 13-16.)

It is well settled in this Circuit that a copyright infringement claim should be dismissed on under Rule 12(b)(6) where the fair use of the copyrighted work is evident from a comparison of the two works. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2175 (2017) ("this court has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim"); *Oyewole v. Ora*, 291 F. Supp. 3d 422 (S.D.N.Y. 2018) (dismissing copyright infringement claim on motion to dismiss based on fair use defense); *TCA Television Corp, v. McCollum*, 151 F. Supp. 3d 419 (S.D.N.Y. 2015) (granting motion to dismiss on basis of fair use defense), *aff'd TCA Television Corp.*, 839 F.3d at 168. In such instances, the "only two pieces of evidence needed to decide the question of fair use" are the "original version" and the allegedly infringing work. *Cariou v. Prince,* 714 F.3d 694, 707 (2d Cir. 2013) (quoting *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 692 (7th Cir. 2012)). Plaintiff has incorporated both the "original version" of his Video, as well as the allegedly infringing use of that work, by reference in to the Complaint. (*See* Dkt. #1, ¶¶ 8, 10 & Exhibits A&B.)

The Copyright Act permits fair use of a protected work for, among other purposes, "news reporting," labeling this use "not an infringement of copyright." 17 U.S.C. § 107. Courts analyze four statutory factors in determining whether an alleged infringement qualifies as fair use: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for

nonprofit educational purposes; (2) the nature of the original work; (3) the amount and substantiality of the portion of the original work used in relation to the original work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Id.* at § 107; *see also Cariou*, 714 F.3d at 705. No single factor is determinative, and all of the factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 578 (1994). Of these, the first and fourth factors are more determinative of fair use. *See Keeling v. Hars*, 809 F.3d 43, 53 (2d Cir. 2015) (noting that "the first factor – 'the purpose and character of the use,' . . . . lies at the 'heart of the inquiry'"); *Harper & Row Publrs. v. Nation Enters.*, 471 U.S. 539, 566 (1985) (holding that the fourth factor – the effect of the use on the potential market for or value of the copyrighted work – is "undoubtedly the single most important element of fair use.").

As discussed below, each factor weighs heavily in favor of a finding of fair use in regard to WHEC's broadcast of a portion of the Video during its newscast and subsequent dismissal of Plaintiff's first claim.

### A. The Purpose and Character of WHEC's Broadcast of the Video Favors Fair Use

"The central purpose of [the purpose and character of use factor] is to see, in Justice Story's words, whether the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message . . . , in other words, whether and to what extent the new work is 'transformative.'" *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (quoting *Campbell*, 510 U.S. at 578); *see also Cariou*, 714 F.3d at 705. Courts considering the purpose and character of the use analyze the following: (1) whether the material was used for any of the favored purposes specifically mentioned in the statute, and (2) whether the defendant used the material for a

meaningfully different or "transformative" purpose than the original. If so, then (3) whether the defendant is a for-profit or non-profit entity deserves little consideration. *Campbell*, 510 U.S. at 578-79. WHEC's use of the Video was of such a purpose and character to mandate a finding of fair use.

### 1. The WHEC Broadcast Was News Reporting

Where a defendant's use of a copyrighted work is specifically identified in § 107, there is a "strong presumption that [the purpose and character factor] favors the defendant." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991); *see also NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004). "News reporting" is specifically identified as fair use under the Copyright Act. *See* 17 U.S.C. § 107; *TCA Television Corp.*, 839 F.3d at 179 ("[T]he uses identified by Congress in the preamble to § 107" are most appropriate for a purpose of character finding indicative of fair use.") (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05[A][1][a] (2016)). In fact, "if a [work] falls into one of [the § 107] categories… assessment of the first fair use factor should be at an end." *Video-Cinema Films, Inc. v. CNN, Inc.*, 2001 U.S. Dist. LEXIS 25687, at *20 (S.D.N.Y. Oct. 1, 2001) (quoting *Wright*, 953 F.2d at 736).

Congress specifically enumerated "news reporting" as a fair use because it rightly recognized that the Copyright Act could chill speech that is at the core of the First Amendment's protections, and, therefore, "must yield to the right of persons to engage in full and free public discourse of ideas and issues . . . ." *Maxtone-Graham v. Burtchaell*, 631 F. Supp. 1432, 1435 (S.D.N.Y. 1986), aff'd, 803 F.2d 1253 (2d Cir. 1986) "To satisfy these First Amendment requirements, Courts have mitigated the chilling effect of copyright law upon free expression . . . by developing . . . the Defense of Fair Use . . . ." *Id.* at 1435.

Here, there is no question that WHEC used the Video in its news reporting, and therefore, the protections Congress has enshrined in the fair use defense must be applied. *See* 17 U.S.C. § 107. Exhibit B to the Complaint, reflecting the allegedly infringing broadcast, reproduces a WHEC news segment which featured the Video as part of WHEC's reporting on the 2016 presidential election. Unquestionably, this event was of significant national, and international, importance and, therefore, deserving of significant news coverage. Nonetheless, courts within this Circuit have upheld the importance of fair use in the context of significantly less newsworthy events. *See Konangataa v. ABC*, 2017 U.S. Dist. LEXIS 95812, at *2-3 (S.D.N.Y. Jun. 21, 2017) (granting motion to dismiss where ABC used excerpts from a father's inadvertent Facebook livestream of the birth of his child).[4]

Because WHEC used the Video in connection with and as a part of its extensive political news coverage the night before the 2016 presidential election coverage, "the Court must lean decidedly in the direction of finding fair use even as it looks at the other . . . factors." *Mathieson v. Associated Press*, 1992 U.S. Dist. LEXIS 9269, at *16 (S.D.N.Y. June 24, 1992).

---

[4] Judge Kaplan granted the motion to dismiss in *Konangataa* from the bench. Although the full transcript can be obtained from the court's docket (S.D.N.Y. No. 16-cv-07382, Dkt. #34), the court summarized the successful fair use argument in a subsequent order:

> On May 16, 2016, Plaintiff publicly live-streamed on Facebook a 45-minute video of his partner giving birth to their child in a hospital delivery room (the "Video"). As of this filing, the Video continues to be publicly available . . . . Defendants and other news outlets reported on the Video and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal. Defendants used very brief excerpts of the Video in their news reports: 30 seconds for NBC, 22 seconds for ABC and Yahoo, and a mere screengrab for CMG.

*Konangataa*, 2017 U.S. Dist. LEXIS 95812, at *2. With due respect to Mr. Konantgataa (who was also represented by Plaintiff's counsel), the birth of his child, and his erroneous use of Facebook, is far less newsworthy – and, correspondingly, within the core of § 107's First Amendment protections – than the 2016 presidential election.

2.   WHEC's Use of the Video was Transformative in Nature

Transformative works "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright." *Campbell*, 510 U.S. at 579. The Supreme Court characterizes a transformative work as one that "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message[.]" *Id.* Indeed, if the secondary work "adds value to the original—if [the original] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings— this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society." *Castle Rock Entm't Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 142 (2d Cir. 1998).

As the Second Circuit has explained:

> In the context of news reporting and analogous activities, moreover, the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration. Courts often find such uses transformative by emphasizing the altered purpose or context of the work, as evidenced by surrounding commentary or criticism.

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014). Indeed, "[t]he robust quality of the First Amendment would be compromised if the news media were confined to authorized sources for its reporting." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 861 F. Supp. 2d 336, 340 (S.D.N.Y. 2012) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)). Even an exact reproduction of a protected work can be considered transformative where each work conveys "different messages and purposes." *Swatch Grp. Mgmt. Servs.*, 756 F.3d at 85.

Here, the transformative nature of WHEC's news report is apparent from a side-by-side comparison with the Video. The original three-minute Video documents a broad array of emotions and voting-related activities high school students at the Integrated Arts and Technology High School Franklin Campus experienced in the run-up to the 2016 election. (*See* Dkt. #1 Ex. A.) It

documents the students' excitement about voting, their preparation to vote, including studying the electoral process and government class, voting and debates on current issues in the election, their analysis of the current political climate and election, as well as the importance of voting and their career plans. There is no author commentary associated with the students' recordings; instead, the Video simply documents the students' statements. Even Plaintiff's website describes the Video as focused on the students' "feelings of the election and of voting for the first time." (https://borisshirman.com/first-time-voters [last accessed August 1, 2018].)

In contrast, WHEC's reporting used limited portions of the Video (*i.e.*, one audio segment of approximately seven seconds and several shorter video-only snippets) as a small part of its extensive political coverage on the eve of the 2016 election. Rather than focusing on the broad *feelings* of the high school students, WHEC used only one short audio excerpt (and related video excerpts) of the Video which focused on the political *issues* the first time voters valued, such as "abortion, racial relations, taxes, healthcare, climate change, and the environment, gun laws." (Clark Decl. Ex. 1, at 30:00.)[5] This amounted to only about seven seconds of the Video's audio component, and roughly twenty-three seconds of its visual components. (*Id.*) Consistent with its focus on the issues that were on these students' minds, WHEC's anchor further reported the fact that they also participated in a "debate and school-wide election" at the high school prior to the 2016 election. (*Id.*) The use of the Video as part of WHEC's political reporting is evident from the programming which bookended the news report in question – namely (i) an advertisement for a county judge candidate followed by a WHEC promotional spot for its "Decision 2016" news

---

[5] *See, e.g., Hershey v. Goldstein*, 938 F. Supp. 2d 491, 491 n.1 (S.D.N.Y. 2013) (considering videos of incident introduced by defendants on motion to dismiss where plaintiff attached excerpts of the videos to the complaint); *see also Virdis Dev. Corp. v. Bd. of Supervisors*, 92 F. Supp. 3d 418, 421 n.4 (E.D. Va. 2015) (considering video on motion to dismiss where complaint incorporated by reference an internet link to the video).

coverage, and (ii) air-time for a candidate for the 134th New York State Assembly District, as a part of its "Decision 2016" coverage – and thus, the report, and WHEC's use of the Video, fit squarely within its political coverage related to the issues in the upcoming election.[6] (*Id.*). The transformative nature of WHEC's use of the Video is clear.

### 3.   The Commercialism Factor Favors Fair Use

Often, courts assign "little weight" to whether the alleged infringer was a commercial entity or not-for-profit. *Swatch Grp. Mgmt. Servs.*, 756 F.3d at 83. Indeed, the Supreme Court recognizes that "nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting . . . are generally conducted for profit in this country." *Campbell*, 510 U.S. at 584 (1994); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 219 (2d Cir. 2015) ("Many of the most universally accepted forms of fair use, such as news reporting . . . are all normally done commercially for profit."). Further, this factor is of limited import where the work is transformative. *See, e.g., Campbell,* 510 U.S. at 579 ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."); *Arrow Prods., LTD. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359, 370 (S.D.N.Y. 2014) ("[T]he court does not place very much significance on this part of the first fair use factor given the transformative nature of the work.").

Courts have "discounted [the commercialism factor] where the link between [the defendant]'s commercial gain and its copying is . . . attenuated such that it would be misleading to

---

[6] While the focus of WHEC's news report was the election the following day, a secondary news focus of its report was the creation of the Video itself by Mr. Shirman – that is, a video documenting the experiences of first-time high school voters created by an up-and-coming photojournalist at RIT was also a noteworthy matter of public interest – both as to high school students' experiences related to the election and their first time voting, and Mr. Shirman's photojournalism video project – all of which was deserving of coverage on the eve of the election.

characterize the use as commercial exploitation." *Swatch Grp Mgmt. Servs.*, 756 F.3d at 83 (internal quotation omitted). Indeed, "news reporting dispels the notion of theft or piracy which has characterized other" copyright actions. *Mathieson v. Associated Press*, 1992 U.S. Dist. LEXIS 9269, at *14 (S.D.N.Y. June 24, 1992). Given the newsworthy and transformative use of the Video, that WHEC is a for-profit entity should not weigh against a determination of fair use.

### B.  The Factual Nature of the Video Favors Fair Use

The second fair use factor looks to "the nature of the copyrighted work" and considers whether the work (1) is expressive or factual, and (2) was previously published. 17 U.S.C. § 107(2); *Cariou*, 714 F.3d at 709-10. "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper*, 471 U.S. 539 at 563 (1985). This factor yields a "greater leeway . . . to a claim of fair use where the work is factual or informational," rather than expressive or creative. *Blanch*, 467 F.3d at 256 (quoting 2 Howard B. Abrams, *The Law of Copyright*, § 15:52 (2006)). Indeed, there is a "public interest in receiving information concerning the world in which we live. The more newsworthy the person or event depicted, the greater the concern that too narrow a view of the fair use defense will deprive the public of significant information." *Monster Communs., Inc. v. Turner Broad. Sys.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996). Further, whether the work is published or unpublished bears on the nature of the work, with "the fair use involving unpublished works being considerably narrower." *Cariou*, 714 F.3d at 709-10.

According to the allegations in the Complaint, the Video was previously published, first on WXXI's YouTube channel, and therefore, free of charge to the entire world. (Dkt #1 ¶ 8.) The Video reflects newsworthy factual material, namely photographs and voice recordings of high school students discussing their thoughts and emotions regarding the 2016 presidential election.

Even Plaintiff's description of himself in the Complaint, as a "photojournalist," reinforces the factual nature of the Video. (Dkt. #1 ¶ 5.) Without diminishing Mr. Shirman's creative expression in the Video, the portions of the Video used by WHEC, are, nonetheless, as much a compilation of facts as they are original creative expression. Under such circumstances, and "without denying for a moment the creativity inherit in the film clips . . . the degree of protection that properly may be afforded to them must take into account that too narrow a view of the fair use defense could materially undermine the ability of other[s] . . . to tell . . . an important part of [the] story." *Monster Communs., Inc.*, 935 F. Supp. at 494. Properly construed, this factor also favors a finding of fair use.

### C.  WHEC Used a Small Amount of the Video in its Broadcast

The third fair use factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Courts ask "whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Blanch*, 467 F.3d at 257. A secondary user must be permitted to "conjure up at least enough of the original" work to accomplish a transformative purpose. *Campbell*, 510 U.S. at 588. The "clear implication of the third factor is that a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is extensive, or encompasses the most important parts of the original." *Authors Guild*, 804 F.3d at 221. In doing so, courts will review both the "quantitative and a qualitative" component of the fair use, including the amount of the original work used, and whether the use was from the "heart" of the work. *Wright v. Warner Books*, 953 F.2d 731 at 738 (2d Cir. 1991).

This factor also markedly favors WHEC. Quantitatively, WHEC used just 7 seconds, or 4% of the audio track, and 23 seconds, or just over 12% of the visual elements, from the Video in

its news report. (*See* Clark Decl. Ex. 1.) Qualitatively, the portion broadcast by WHEC is far from

the "heart" of the work. *Harper*, 471 U.S. 539, at 544. Indeed, WHEC broadcasted one discrete

topic out of close to a dozen topics addressed by the students therein. *Wright*, 953 F.2d at 738 (*see*

*also* Point I(A)(2), *supra.*). The actual use of the Video was, therefore, quite minimal.

### D.   The Lack of Market Effect Factor Favors WHEC

The Supreme Court has stated that the fourth factor, the effect of the use on the potential

market for or value of the copyrighted work, is "undoubtedly the single most important element

of fair use," *Harper*, 471 U.S. 539 at 566. (*and n.b.*, *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp.

2d 177, 189 (D. Mass. 2007) ("Since this question goes to the heart of whether allowing or

prohibiting a use furthers the ends of the Copyright Act, market effect is 'undoubtedly the single

most important element of fair use.'" (quoting *Harper*, 471 U.S. 539, at 566)). This factor, the

market effect, "is concerned with only one type of economic injury to a copyright holder: the harm

that results because the secondary use serves as a substitute for the original." *Authors Guild, Inc.*

*v. HathiTrust,* 755 F.3d 87, 99 (2d Cir. 2014). Courts are concerned only "whether the secondary

use usurps the market for the original work." *Cariou*, 714 F.3d at 708. Market usurpation occurs

most often "where the infringer's target audience and the nature of the infringing content are the

same as the original." *Id.* at 709. Generally, then, "the more transformative the secondary use," the

less likely it is "that the secondary use substitutes for the original." *Castle Rock Entm't Inc.,* 150

F.3d at 145. Where the alleged infringer used only a small portion of the protected work, it is

unlikely to usurp the market for the whole work. *Hofheinz v. A&E TV Networks*, 146 F. Supp.2d

442, 449 (S.D.N.Y. 2001). Further, this factor will favor fair use where the alleged infringer "likely

spurred interest" in the protected work. *Id*.

In this case, the Complaint does not allege that WHEC's broadcast of the Video had any effect on the market demand for the Video, let alone a complete market usurpation. (Dkt. #1.) In fact, the Complaint does not even allege the existence of a market for the Video or any profits derived from, or anticipated to be derived from, the Video. The content of the Video is temporal in nature, reflecting feelings of high school students prior to the 2016 presidential election; it is likely there is no market in the first place, let alone any market that was usurped by WHEC's one-time, transformative use. If anything, WHEC's use of the Video *increased* its potential market value – and the market for Plaintiff's other works – by providing him with exposure (including on-air attribution of authorship, by name, and his affiliation with RIT), which he continues to promote *and credit to WHEC* on his website. Any argument Plaintiff could hypothetically make to support the existence of any such market is immediately undermined by the continued, free distribution of the Video on WXXI's YouTube channel and *Plaintiff's own website* to this day. WHEC's use of the Video aggrandized, not diminished, both Plaintiff and his work.

## II.  PLAINTIFF'S SECOND CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLEAD THE ESSENTIAL ELEMENTS OF A DMCA VIOLATION

Plaintiff's second claim alleges that WHEC violated the Digital Millennium Copyright Act, as implemented by 17 U.S.C. § 1202 ("DMCA"), by removing copyright management information from the Video and using that modified work in its broadcast. (Dkt. #1, ¶¶ 18-19, Ex. A). The DMCA states, in relevant part, "no person shall, without the authority of the copyright owner or the law

(1)  intentionally remove or alter any copyright management information,

(2)   distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

16

(3)  distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."

17 U.S.C. § 1202(b). "Copyright management information" (or "CMI") is, in turn, defined as information "conveyed in connection with" a protected work, such as:

(1)  The title and other information identifying the work, including the information set forth on a notice of copyright.

(2)  The name of, and other identifying information about, the author of a work.

(3)  The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

*Id.* at § 1202(c)(1)-(3).

"[T]he point of CMI is to inform the public that something is copyrighted and to prevent infringement." *See Pers. Keepsakes, Inc. v. PersonalizationMall.Com, Inc.*, 2012 U.S. Dist. LEXIS 15280, at *18 (N.D. Ill. Feb. 8, 2012). The DMCA exists, in part, to protect that copyright notice. *See id.* The legislative history of § 1202 of the DMCA reflects this intent:

A new 'Section 1202' to the Copyright Act is required . . . to ensure the integrity of the electronic marketplace by preventing fraud and misinformation. The section prohibits intentionally providing false copyright management information, such as the title of a work or the name of its author, with the intent to induce, enable, facilitate or conceal infringement. It also prohibits the deliberate deleting or altering [of] copyright management information. This section will operate to protect consumers from misinformation as well as authors and copyright owners from interference with the private licensing process.

H.R. Rep. No. 105-551, at 10-11 (1998).

To state a plausible claim under § 1202(b), a plaintiff must allege "(1) the existence of CMI on the products at issue; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Aaberg v. Francesca's Collections, Inc.*, 2018 U.S. Dist.

LEXIS 50778, at *17 (S.D.N.Y. Mar. 27, 2018) (citing *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010)). A DMCA claim, like any other claim brought in federal court, must be pleaded plausibly. *See DISH Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 460 (E.D.N.Y. 2012). In this Circuit, that standard requires the application of two principles:

> First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." ... "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss" and "[d]etermining whether a complaint states a plausible claim for relief will ... be a context—specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

According to the Plaintiff's factual allegations, the only CMI conveyed in connection with the Video was his name, contained within the YouTube description *supplied by WXXI*. The Plaintiff does not allege that WXXI attached this limited authorial information at his direction or request, or that he took any steps to apply CMI to the Video in his own right. WHEC has found no example where a plaintiff, who was too disinterested to employ even a modicum of effort in applying CMI to a work, nonetheless sought relief under § 1202(b) after a third party exercised such prudence. Nonetheless, even were the Court to consider the WXXI attribution to constitute CMI "conveyed in connection with" the Video, Plaintiff's claim would still fail because he cannot plead facts demonstrating removal of the CMI, or that WHEC acted with the requisite intent to give rise to a DMCA claim.

### A.  WHEC's Fair Use of the Video Forecloses a DMCA Claim

As discussed in Point I, *supra*, because WHEC's use of the Video was fair use, Plaintiff's DMCA claim of removal of copyright management information must also fail. The DMCA states

that "[n]othing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, *including fair use,* under this title." 17 U.S.C. § 1201(c)(1) (emphasis added). There can be no violation of § 1202(b) where an alleged infringing party establishes that its use of the work was fair use. *See Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 914 (E.D. Mo. 2015) (dismissing CMI removal claim because "the DMCA expressly states its operation is not intended to affect fair use rights. Thus, [defendant's fair use] use of [plaintiff's] images cannot be a violation of § 1202(b)(1)") (citation omitted); *cf Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 n.8 (3d Cir. 2011) ("those intending to make fair use of a copyrighted work are unlikely to be liable under § 1202."). As discussed above, WHEC's use of the Video was fair use. Accordingly, plaintiff's DMCA claim must also be dismissed.

## B.   WHEC Did Not Remove CMI

Plaintiff's DMCA claim first fails for lack of an essential predicate: despite his summary pleading to the contrary, the exhibits and references contained within the Complaint conclusively demonstrate that WHEC did not "remove[] copyright management information identifying Plaintiff as the author of the Video" as the Complaint alleges. (Dkt. #1, ¶ 19.)

Plaintiff asserts that WHEC broadcast the Video on "its Website." The referenced website, http://www.whec.com/pages/it/livestream.shtml, is the location where WHEC streams its live broadcasts to the Internet, and Exhibit B to the Complaint is a recording of 32 seconds of that live stream, without audio.[7] It is unclear why the Plaintiff deemed it appropriate to supply the Court

---

[7] Because the referenced website is incorporated by reference in the Complaint, it may be considered on a motion to dismiss. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) ("Some of the facts are drawn from the Court's own review of [a referenced] website. Because the website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss."). As a corollary, because Plaintiff relies on WHEC's use of the video to plead the DMCA claim, the broadcast in question is "integral" to his claim, and therefore, becomes part of the

with a sample of the broadcast without the audio component. Nonetheless, a complete copy of the referenced broadcast has been provided to the Court. (*See* Clark Decl., Ex. 1.) At the 30:00 mark, the WHEC anchor introduces a story on first-time voters in the Rochester area, and that story is illustrated with clips from the Video (just as in Exhibit B). The anchor concludes by noting the Video was "shot and produced by RIT sophomore, Boris Shirman." (*Id.*)

A simple viewing of the broadcast shows conclusively that WHEC did not remove[8] any CMI found in the WXXI YouTube description, as the Plaintiff alleges in his Complaint. (*Compare* Dkt. #1, ¶ 19 *with* Ex. B). Rather, WHEC repeated verbatim (and then, expanded on) that information in attributing the Video to the Plaintiff. Whether a third party was to view the Video via the WXXI YouTube channel, or the WHEC broadcast, he or she would know precisely the same thing: the Plaintiff was the author of the work. Because the Plaintiff's conclusory allegation that CMI was removed conflicts with the evidence incorporated by reference, the latter controls, and the "allegation [in the complaint] is not accepted as true." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.2d 500, 502 (S.D.N.Y. 2009); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's allegations are contradicted by [a document attached to

---

complaint. *See L-7 Designs, Inc. v. Old Navy*, 647 F.3d 419, 421 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (a complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are "integral to the complaint"). Therefore, the Court is entitled to consider the substance of the broadcast as part of this motion, since the Plaintiff refers to it in the Complaint and has incorporated it by reference. *See Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 720 (S.D.N.Y. 2015) (citing *Nikci v. Quality Building Services*, 995 F. Supp. 2d 240, 244 n.1 (S.D.N.Y. 2014) (considering surveillance video where plaintiff relied on video in complaint and stated that the video was incorporated by reference in the motion to dismiss briefing)).

[8] The common and understood meaning of the verb "remove" is "to get rid of: eliminate." Merriam Webster's Collegiate Dictionary, 10th ed., 990.

the complaint as an exhibit], those allegations are insufficient to defeat a [Rule 12(b)(6)] motion to dismiss.").

Therefore, the facts presented to the Court make it implausible to assert that WHEC removed CMI from the Video. Without this essential element, the second claim must be dismissed.

### C. Plaintiff's Conclusory Allegation of Intent Are Insufficient to Sustain a DMCA Claim

The second claim fails for an additional reason: the Plaintiff has not pleaded the intent requirement of a DMCA violation, *i.e.*, that WHEC altered or removed CMI "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).

As a general matter, a plaintiff does not satisfy his pleading obligations under Rule 8 by regurgitating a legal conclusion as a fact allegation. *See, e.g., L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*, 2017 U.S. Dist. LEXIS 171708, at *5 (W.D.N.Y. Oct. 17, 2017) ("[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Iqbal*, 556 U.S. at 678). As applied to this case, that general rule means that the DMCA's intent requirement cannot be satisfied merely by pointing to the alleged mishandling of CMI itself, or summarily concluding that the requisite intent exists. *See, e.g., William Wade Waller Co. v. Nexstar Broad., Inc.*, 2011 U.S. Dist. LEXIS 72803, at *12-13 (E.D. Ark. July 6, 2011) (even removing CMI is not itself a violation of the DMCA because under the express language of the statute a "defendant who does so violates the DMCA only if he knows or has reason to know that removal of copyright management information would 'induce, enable, facilitate, or conceal an infringement' of any right under copyright law"); *Gordon v. Nextel Commc'ns*, 345 F.3d 922, 927 (6th Cir. 2003) (affirming district court conclusion that removal of

CMI and distribution of copyright work did not suffice to establish "intent" to facilitate or conceal infringement).

The mechanical allegations of intent directed at WHEC are barebones; in fact, they have already been rejected by another district court for this precise reason. In *Chevrestt v. Am. Media, Inc.*, Judge Stanton of the Southern District of New York granted a motion to dismiss a DMCA claim on the grounds that the complaint was devoid of factual allegations from which an reasonable inference of the requisite intent. 204 F. Supp. 3d 629, 631-32 (S.D.N.Y. 2016). The allegations that Judge Stanton found so deficient *are precisely the same allegations now leveled against WHEC*:

| *Chevrestt v. Am. Media, Inc.* | *Shirman v. WHEC-TV, LLC* |
|---|---|
| 24. Upon information and belief, in its article in the Magazine, American intentionally and knowingly removed copyright management information identifying Plaintiff as the photographer of the Photograph. | 18. Upon information and belief, in its posting on the Website, Defendant copied the Video from the YouTube website and placed it on its Website. |
| 26. Upon information and belief, American's falsification, removal and/or alteration of the aforementioned copyright management information was made without the knowledge or consent of Plaintiff. | 21. Upon information and belief, WHEC['s] falsification, removal and/or alteration of the aforementioned copyright management information was made without the knowledge or consent of Plaintiff. |
| 27. Upon information and belief, the falsification, alteration and/or removal of said copyright management information was made by American intentionally, knowingly and with the intent to induce, enable, facilitate, or conceal their infringement of Plaintiff's copyrights in the Photograph. American also knew, or should have known, that such falsification, alteration and/or removal of said copyright management information would induce, enable, facilitate, or conceal their infringement of Plaintiff's copyrights in the Photograph. | 22. Upon information and belief, the falsification, alteration and/or removal of said copyright management information was made by WHEC intentionally, knowingly and with the intent to induce, enable, facilitate, or conceal their infringement of Plaintiff's copyright in the Video. WHEC also knew, or should have known, that such falsification, alteration and/or removal of said copyright management information would induce, enable, facilitate, or conceal their infringement of Plaintiff's copyright in the Video. |

*See id.* ; *see also* Dkt. #1, ¶¶ 18, 21-22. Such striking similarity is not by happenstance as the Plaintiff's counsel also represented the copyright claimant in *Chevrestt*.

Based upon the Plaintiff's own allegations, and the exhibits attached to the Complaint, there can be no reasonable inference that WHEC exhibited the requisite intent needed for a DMCA violation. Based strictly on those sources, it is evident that WHEC conveyed the exact same CMI in conjunction with the broadcast as was set forth in the YouTube description, *i.e.*, the author of the Video. On the basis of these assertions, the Court cannot even infer that WHEC had the necessary intent to encourage, facilitate, or conceal infringement.

Without plausible allegations of the necessary intent, the DMCA claim must be dismissed.

## III.   THE DEFICIENCIES OF THE COMPLAINT CANNOT BE OVERCOME BY REPLEADING

Although the Plaintiff has the option to amend his Complaint once as a matter of right, no amount of repleading can cure the defects of his claims.

Importantly, a plaintiff whose complaint is subject to a motion to dismiss cannot simply change his or her statements of fact to sidestep dismissal. *See Colliton v. Cravath, Swaine & Moore LLP*, 2008 U.S. Dist. LEXIS 74388, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd* 356 F. App'x 535 (2d Cir. 2009) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true."); *see also Kasparov v. Ambit Tex., LLC*, 2016 U.S. Dist. LEXIS 31637, at *6 (E.D.N.Y. Mar. 10, 2016) ("A court has no obligation to accept as true an amended complaint's allegations if they directly contradict facts set forth in a prior pleading."); *Wallace v. N.Y.C. Dep't of Corr.*, 1996 U.S. Dist. LEXIS 22368, at *2 (E.D.N.Y. Oct. 9, 1996) (accepting as true facts alleged in the original complaint where plaintiff alleged directly contradictory facts in his amended complaint

submitted to defeat motion to dismiss). Similarly, a plaintiff cannot interpose new facts or legal theories to stave off dismissal. *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss, let alone new allegations that contradict the allegations in their pleading.").

Even were the Plaintiff to attempt to amend the Complaint, no amount of repleading can change the facts of WHEC's use of the Video or that it constituted fair use under 17 U.S.C. § 107. Nor can repleading change the fact that WHEC repeated the same authorial information on its broadcast that was made available on the WXXI YouTube channel. Nor can he articulate a plausible basis to infer that WHEC acted with the requisite intent necessary for a DMCA claim, since attributing the Video to the Plaintiff is incompatible with conduct designed to "induce, enable, facilitate, or conceal an infringement." In particular, should the Plaintiff attempt to replead his claims, Rule 11 requires that he carefully investigate those claims further and determine whether such an amendment is in good faith. *See Economic Opportunity Commission v. County of Nassau*, 47 F. Supp. 2d 353, 371 (E.D.N.Y. 1999) (noting that an amended complaint containing merely "perfunctory or cosmetic changes . . . may well be regarded by the Court as a frivolous filing in violation of Fed. R. Civ. P. 11.") (quotations and citations omitted).

## CONCLUSION

Disposing of this Complaint under Rule 12(b)(6) serves to fulfill the First Amendment balance sought by 17 U.S.C. § 107 by protecting against the detrimental chilling of political speech and news reporting which are cornerstone principles of our society. If news media defendants are forced to expend time and resources litigating cases such as this one, where "…the First Amendment protects their use of a copyrighted work, the prospect of having to litigate even a

24

successful First Amendment defense might cause them to shy away from the use." Alan E. Garfield, *The Case for First Amendment Limits on Copyright Law*, 35 Hofstra L. Rev. 1169, 1195 (2007); *see also* William McGeveran, *Rethinking Trademark Fair Use*, 94 Iowa L. Rev. 49, 52 (2008) ("The lethal combination of uncertain standards with lengthy and costly litigation creates a classic chilling effect upon the unlicensed use of trademarks to facilitate speech, even when such uses are perfectly lawful." (footnote omitted)). "Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech . . . harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (citation omitted).

For the reasons set forth above, WHEC respectfully requests that its motion to dismiss be granted.

Date: August 7, 2018                    **WARD GREENBERG HELLER & REIDY LLP**

<u>            s/ Jeffrey J. Harradine            </u>
                    Jeffrey J. Harradine
                    William R. Leinen

                    1800 Bausch & Lomb Place
                    Rochester, New York 14604
                    (585) 454-0700
                    jharradine@wardgreenberg.com
                    wleinen@wardgreenberg.com

                    *Attorneys for Defendant WHEC-TV, LLC*