UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BORIS SHIRMAN,

                              Plaintiff,

                                                      Case # 18-CV-6508-FPG

v.

                                                      DECISION AND ORDER

WHEC-TV, LLC,

                              Defendant.
_____

## INTRODUCTION

Plaintiff Boris Shirman brings this copyright infringement action against Defendant WHEC-TV, LLC ("WHEC"), alleging that WHEC used a video he created in one of its evening news broadcasts. ECF No. 10. Before the Court is WHEC's motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11. WHEC argues that Shirman's action fails as a matter of law because its use of his video constituted fair use. WHEC also argues that Shirman is not entitled to statutory attorney's fees. On May 15, 2019, the Court held a hearing on WHEC's motion. For the reasons that follow, WHEC's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a

claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted). Along with the facts alleged in the complaint itself, a court may consider any items incorporated by reference in or integral to the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Therefore, the Court considers Shirman's video and WHEC's news broadcast in resolving the motion. *See Hirsch v. Complex Media, Inc.*, No. 18 Civ. 5488, 2018 WL 6985227, at *2 (S.D.N.Y. Dec. 10, 2018).

## BACKGROUND

Unless otherwise noted, the following facts are taken from the amended complaint and the relevant videos. Shirman is a professional photographer "in the business of licensing his photographs and videos to online and print media for a fee." ECF No. 10 ¶ 5. Before the 2016 presidential election, Shirman interviewed and took photographs of "18-year-old first-time voters who attended Integrated Arts and Technology High School at the Franklin Campus" in Rochester. *Id.* ¶ 7. He assembled the audio recordings and photographs into a video montage. In the video, the audio interviews are spliced together and organized thematically—the students discuss their excitement about voting; how they prepared to vote; their "Participation in Government" class; their classroom debates; the upcoming schoolwide mock election; the issues they care about; their views on the presidential election; and the importance of voting. Photographs of the students are displayed to correspond to their interviews.[1] Shirman alleges that he created this video "for purposes of news reporting." *Id.* ¶ 8.

---

[1] The video is available on YouTube at https://www.youtube.com/watch?v=cHgzw1vM7Q8. *See* ECF No. 10 ¶ 9.

2

On October 27, 2016, the video was uploaded to YouTube, apparently by WXXI News. *Id.* ¶ 9. The amended complaint does not explain how WXXI obtained Shirman's video or why it uploaded the video to YouTube.

Regardless, on November 7, 2016—the night before the presidential election—WHEC used a portion of the video in its evening news broadcast. The broadcast included stories on the upcoming election as part of its "Decision 2016" coverage. WHEC used a clip from Shirman's video in one such story. The anchor introduces the story by saying, "You'll probably never forget the first time you voted, and I have a feeling these students won't either." The broadcast switches to a clip from Shirman's video—both the audio and video—where students describe the issues that are important to them. That segment lasts for approximately 8 seconds. Then, for approximately 15 seconds, the anchor speaks over Shirman's video, which continues to display photographs of the students. The anchor says, "Integrated Arts and Technology High School Students at Franklin Campus—they are preparing as first-time voters with a debate in schoolwide elections. Their excitement was captured in this video shot and produced by RIT Sophomore Boris Shirman." The ribbon at the bottom of the broadcast states: "FIRST TIME VOTERS PREPARE FOR THE ELECTION." In total, the story is approximately 30 seconds long. WHEC used the video without obtaining a license from Shirman and without Shirman's consent. *Id.* ¶ 17.

Shirman later registered the video with the U.S. Copyright Office. His registration has an effective date of March 14, 2018. *Id.* ¶ 12. On July 11, 2018, Shirman filed the present action. ECF No. 1. In his amended complaint, he alleges one claim for copyright infringement, and he seeks damages and attorney's fees under 17 U.S.C. § 505. ECF No. 10.

# DISCUSSION

WHEC moves to dismiss the amended complaint, arguing that a comparison of the videos establishes as a matter of law that WHEC's use constitutes a fair use. As discussed below, the Court concludes that the amended complaint and relevant videos fail to establish fair use as a matter of law. Furthermore, WHEC contends, and Shirman concedes, that his request for attorney's fees fails because WHEC's alleged infringement occurred before Shirman registered his work. The Court will therefore dismiss that aspect of Shirman's claim.

## I. Relevant Law

In its motion, WHEC does not contend that Shirman cannot meet the elements for a claim of copyright infringement. Instead, WHEC raises the defense of fair use.

"It has long been recognized that certain unauthorized but 'fair' uses of copyrighted material do not constitute copyright infringement." *Ass'n of Am. Med. Colls. v. Cuomo*, 928 F.2d 519, 523 (2d Cir. 1991). Congress codified this defense in 17 U.S.C. § 107, which states that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research is not an infringement of copyright." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016). "Four nonexclusive factors . . . are properly considered in 'determining whether the use made of a work in any particular case is a fair use.'" *Id.* (quoting 17 U.S.C. § 107). The four factors are:

   (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

   (2) the nature of the copyrighted work;

   (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

   (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

These factors must be "weighed together, in light of the purposes of copyright." *Graham v. Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017). The inquiry is "open-ended and context-sensitive," thus rendering it "usually unsuited to summary disposition." *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011); *see also Graham*, 265 F. Supp. 3d at 377 (noting that "courts generally do not address the fair use defense until the summary judgment phase"). Although fair use is an affirmative defense, thus placing the burden of proof on the proponent, the proponent need not prove that each factor weighs in its favor. *See NXIVM Corp. v. Ross Instit.*, 364 F.3d 471, 477 (2d. Cir. 2004); *LaChapelle*, 812 F. Supp. 2d at 442.

## II. Analysis

### a. First Factor: Purpose and Character of the Use

The first factor "considers the purpose and character of the secondary use." *McCollum*, 839 F.3d at 179. The key inquiry as to this factor is the "transformative nature of the work." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) (internal quotation marks omitted). "The question is whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* (internal quotation marks and brackets omitted). Courts also examine whether the new work is of a commercial or nonprofit nature, and whether the new work fits within any of the categories expressly identified in Section 107. *See Blanch v. Koons*, 467 F.3d 244, 253-54 (2d Cir. 2006); *McCollum*, 839 F.3d at 179. The "heart" of the fair use inquiry is this first factor. *Graham*, 265 F. Supp. 3d at 377.

WHEC argues that the first factor favors fair use because its broadcast was transformative and constituted "news reporting" within the meaning of Section 107. WHEC claims that its

5

broadcast was transformative in two respects. First, Shirman's video "focuses on a myriad of *feelings* experienced by the subject students, whereas WHEC transformed several short visual excerpts and one audio excerpt of [Shirman's video] into political news coverage of *issues* important to new voters in the 2016 presidential election." ECF No. 11-1 at 7. Second, WHEC asserts that another "focus of its report was the creation of the Video itself by Mr. Shirman – that is, a video documenting the experiences of first-time high school voters created by an up-and-coming photojournalist at RIT." *Id.* at 16.

As an initial matter, the mere fact that WHEC's broadcast may constitute "news reporting" is not dispositive. Although the first factor is presumed to favor the defendant if its infringing work falls within one of the categories identified in Section 107, *NXIVM Corp.*, 364 F.3d at 477, the use of copyrighted material that "merely repackages or republishes the original is unlikely to be deemed a fair use," even if it can be described as a "news report." *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 532 (S.D.N.Y. 2018) (internal quotation marks omitted). The more significant question is whether the new use is transformative. *See Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 177 (2d Cir. 2018).

In the context of news reporting, two Ninth Circuit cases illustrate the distinction between a transformative use and a non-transformative one. Both cases dealt with a video of a beating that occurred during the 1992 Los Angeles riots. *See L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1120 (9th Cir. 1997); *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 929 (9th Cir. 2002). Los Angeles News Service ("LANS"), an independent news organization, captured the footage when its helicopter hovered above the beating. *KCAL-TV*, 108 F.3d at 1120.

In the first case, LANS accused a television station of broadcasting 30 seconds of the footage on its evening news broadcasts. *Id.* The Ninth Circuit found that the station's use was not

transformative. *Id.* at 1122. The court noted that the station aired the footage "as if it were [the station's] own" and "simply used [the footage] as part of [its] coverage of the riots." *Id.* While the station ran its own "voice-over," the station did not add "anything new or transformative to what made the [footage] valuable—a clear, visual recording of the beating itself." *Id.* In other words, the station "used [the footage] for the same purpose for which it would have been used had it been paid for." *Id.*

By contrast, in the second case, the Ninth Circuit found that the use of the footage was transformative. There, Court TV, a television station, used "a few seconds" of the riot footage in its "introductory montage for its show 'Prime Time Justice.'" *CBS Broad., Inc.*, 305 F.3d at 929. The show "used a stylized orange clock design superimposed over a grainy, tinted, monochromatic video background. The background changed as the 'hands' of the clock revolved; [the riot footage] was in the background for a couple of seconds, one 360° sweep of the clock." *Id.* The court reasoned that the development of the montage "plausibly incorporates the element of creativity beyond mere republication, and it serves some purpose beyond newsworthiness." *Id.* at 939.

In this case, the Court cannot conclude as a matter of law that WHEC's use was transformative. The distinction that WHEC draws between the purpose of Shirman's video and the purpose of its broadcast might be plausible, but it is not the only reasonable inference. WHEC's broadcast could be reasonably viewed as a mere summary of the contents of Shirman's video. *See Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (noting that courts examine "how the artworks might 'reasonably be perceived' in order to assess their transformative nature"). Specifically, WHEC's broadcast plays a portion of Shirman's video—wherein the students identify the political issues important to them—and the anchor then summarizes other information the students share in Shirman's video—that they are having a mock election and a debate. Thus,

7

WHEC's broadcast arguably uses Shirman's video for the same purposes as the original: reporting on how these students prepared for the election and what issues they care about. The modifications WHEC made to Shirman's video, like using only a portion of it and inserting a voice-over, did not change its purpose. Put differently, it could be concluded that WHEC did not use Shirman's video in a manner that created "new information, new aesthetics, new insights and understandings." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 351 (S.D.N.Y. 2017). *Compare id.* at 352 (website's use of paparazzi photographs not transformative because website used photographs "as they were originally intended to be used," *i.e.*, "to document the comings and goings of celebrities, illustrate their fashion and lifestyle choices, and accompany gossip and news articles about their lives"), *with Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 Civ. 7128, 2001 WL 1518264, at *6 (S.D.N.Y. Nov. 28, 2001) (use of old movie footage in broadcast concerning actor's death deemed transformative because original work was "intended to entertain its audience," whereas the "obituaries aimed to inform the viewing public of [the actor's] death and educate them regarding his impact on the arts").

The Court is similarly not convinced by WHEC's alternative claim that the purpose of its video was to report on "the creation of the Video itself." ECF No. 11-1 at 16 n.5. This is so even if the Court assumes, as WHEC asserts, that Shirman's "photojournalism video project" was a "noteworthy matter of public interest." *Id.* A reasonable viewer would not necessarily conclude that the purpose of WHEC's broadcast was to report on the fact that Shirman was making a video. To the contrary, there is evidence that the purpose of the broadcast was to share the *contents* of the video, not the *making* of the video. First, the ribbon at the bottom of the broadcast states "FIRST TIME VOTERS PREPARE FOR THE ELECTION," which does not suggest that the purpose of the story is to report on the fact that Shirman made a video. Second, the contents of the story—

8

both the audio taken from Shirman's video as well as the anchor's voice-over—focus on the students' preparation for the election, not Shirman's creation of the video. Indeed, the anchor only once refers to the fact that Shirman produced the video. WHEC has not established as a matter of law that its use was transformative.

Finally, the Court notes that WHEC used Shirman's video in a commercial context, which weighs against it for purposes of the first factor. "The crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Barcroft Media, Ltd.*, 297 F. Supp. 3d at 253. Taking the facts in the light most favorable to Shirman, this consideration weighs in his favor. Shirman is in the business of licensing his photographs and videos, and WHEC "routinely licenses photographs and video footage from copyright owners" in connection with its broadcasts. ECF No. 10 ¶¶ 5, 25. WHEC profited by using Shirman's video without paying any licensing fees. *See KCAL-TV*, 108 F.3d at 1121; *Barcroft Media, Ltd.*, 297 F. Supp. 3d at 353.

As a result, the Court cannot determine that the first factor weighs in WHEC's favor as a matter of law.

### b. Second Factor: Nature of the Copyrighted Work

"The second statutory factor is the nature of the copyrighted work." *Blanch*, 467 F.3d at 256 (internal quotation marks omitted). This factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Id.* In assessing this factor, a court considers "(1) whether the work is expressive or creative, . . . and (2) whether the work is published or unpublished." *Id.* A claim to fair use is more plausible "where the work is factual and informational" and is published. *Id.*

WHEC argues that this factor favors fair use, because Shirman's video was previously published and largely "reflects newsworthy factual material." ECF No. 11-1 at 18. At this stage, the Court need not definitively determine this factor. For purposes of WHEC's motion, it suffices to say that WHEC makes a persuasive claim that this factor weighs in its favor. Shirman's video was published prior to WHEC's use. Furthermore, while Shirman's video incorporates creative elements—chiefly in the organization and layout of the students' photographs—it primarily conveys factual information about the students. *See KCAL-TV*, 108 F.3d at 1122.

### c. Third Factor: Amount and Substantiality of the Portion Used

"The third factor bearing on fair use is the amount and substantiality of the portion used in relation to the copyrighted work as a whole. The question is whether the quantity and value of the materials used, are reasonable in relation to the purpose of the copying." *Blanch*, 467 F.3d at 257 (internal quotation marks and citation omitted). "That is, the Court must weigh whether the amount copied is reasonable in relation to the purported justifications for the use under the first factor." *Barcroft Media, Ltd.*, 297 F. Supp. 3d at 354 (internal quotation marks omitted).

WHEC argues that the third factor favors fair use because, quantitatively, WHEC used only a small portion of Shirman's video, and, qualitatively, the portions it used were not the "heart" of his video. ECF No. 11-1 at 19.

As with the second factor, the Court need not definitively determine the weight of the third factor. On the one hand, WHEC makes a strong argument that it used only a small portion of Shirman's video. On the other hand, segments of Shirman's video make up a large part of WHEC's broadcast: of the 30-second story, approximately 26% (8 seconds) is simply the audio and video of Shirman's video, and another 50% (15 seconds) includes video segments of Shirman's video. That is, a substantial portion of WHEC's broadcast was simply repackaged

segments of Shirman's video. This consideration weighs against fair use. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985) ("[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 587-88 (1994) ("[A] work composed primarily of an original, particularly its heart, with little added or changed, is more likely to be a merely superseding use, fulfilling demand for the original.").

In any case, it is difficult to fully assess this factor given the disputes over the purpose of WHEC's broadcast. To the extent that WHEC used Shirman's video for its original purpose, this factor may weigh against it. *See Barcroft Media, Ltd.*, 297 F. Supp. 3d at 354 (stating that where copier's use was not transformative, "the qualitative and quantitative amounts used were inherently unreasonable"); *KCAL-TV*, 108 F.3d at 1122 (third factor weighed against television station where it used "most valuable part" of videographer's footage in its newscasts). Given these issues, the Court cannot conclude on a motion to dismiss that this factor necessarily favors WHEC.

### d. Fourth Factor: Effect upon the Potential Market

"The fourth factor is the effect of the use upon the potential market for or value of the copyrighted work. The court looks to not only the market harm caused by the particular infringement, but also to whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Bill Graham Archives*, 448 F.3d at 613 (internal quotation marks and citation omitted); *see also Tveyes, Inc.*, 883 F.3d at 179 (stating that a court must consider "the market harm that would result from unrestricted and widespread conduct of the same sort" (internal quotation marks and brackets omitted)).

11

WHEC contends that the fourth factor favors fair use because the amended complaint fails to allege any viable market harm as a result of its use of Shirman's video. Taking the facts in the light most favorable to Shirman, the Court is not convinced. Shirman alleges that he and WHEC operate in the same market: he licenses his newsworthy work to others, and WHEC obtains licenses for such work for purposes of its broadcasts. By simply using Shirman's video in an arguably non-transformative manner, WHEC adversely impacted the potential market for Shirman's work. And as the Ninth Circuit recognized in *KCAL-TV*, if such conduct became widespread, it would "destroy" the market for Shirman's work. *KCAL-TV*, 108 F.3d at 1123 ("[The television station] was ready to buy from LANS if it could, but went elsewhere when it couldn't. Were this to happen more broadly, it no doubt would adversely affect LANS's creative incentives."); *see also Barcroft Media, Ltd.*, 297 F. Supp. 3d at 355 ("[I]f [the website's] practice of using celebrity and human interest photographs without licensing were to become widespread, it is intuitive that the market for such images would diminish correspondingly: If gossip and entertainment websites could use such images for free, there would be little or no reason to pay for [the photographer's] works."). Ultimately, WHEC's claims on the fourth factor raise factual issues that are unsuited for resolution on a motion to dismiss.

In sum, the Court cannot conclude as a matter of law that WHEC has established its fair use defense. Factual issues, particularly concerning whether WHEC's use was transformative and whether the market for Shirman's work was adversely affected, preclude summary disposition. Accordingly, WHEC's motion is denied insofar as it seeks dismissal of the amended complaint.

### III. Attorney's Fees

WHEC argues that Shirman is not entitled to attorney's fees under the Copyright Act because he registered his work after the alleged infringement. At the hearing, Shirman's counsel

conceded that attorney's fees are not recoverable under these circumstances. Therefore, WHEC's motion is granted as to Shirman's request for attorney's fees. *See Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16CV724, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016) ("[I]n order to obtain . . . attorneys' fees, a plaintiff must have registered its copyright prior to the alleged infringement."); 17 U.S.C. § 412(2).

## CONCLUSION

For the reasons discussed above, WHEC's motion to dismiss (ECF No. 11) is GRANTED IN PART and DENIED IN PART. The motion is granted insofar as Shirman may not recover attorney's fees under 17 U.S.C. § 505, but is otherwise denied. WHEC shall file an answer to the amended complaint by June 24, 2019.

IT IS SO ORDERED.

Dated: May 17, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court